**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEN STUART SPARKS, | No. CIV S-06-0334-MCE-CMK-P |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| S.R. MOORE, et al., | |
| Respondents. | |
| _____/ | |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, primarily challenging the denial of parole in 2004. Pending before the court are petitioner's petition (Doc. 1), respondents' answer (Docs. 14 and 15), and the parties' supplemental briefs addressing the applicability of Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008), rehearing en banc granted, 527 F.3d 797 (9th Cir. 2008) (Docs. 17 and 18).

/ / /

/ / /

/ / /

/ / /

# I.  BACKGROUND

Petitioner pleaded guilty to second degree murder and was sentenced on September 23, 1980, to a life term in state prison with the possibility of parole.[1] According to petitioner, as of the date he filed the instant federal petition on February 16, 2006, he had appeared at nine parole suitability hearings.  He currently challenges the denial of parole in September 2004.[2]  In it's decision, the Board of Prison Terms ("Board") denied parole for one year citing the following:  (1) the facts of petitioner's commitment offense; (2) prior criminal and social history; (3) failure to upgrade vocationally while in prison; and (4) unsuitable parole plans. As to vocation and parole plans, the Board stated:

> . . .And he's been in over 20 years, but I see no vocation, even though he may have marketable skills.  This is something that the Board is concerned about for the reasons that I'll get into later.  Parole plans.  The Prisoner needs to firm up his parole plans. . . .  He doesn't have money.  He doesn't have food.  So he's burglarizing.  And if he doesn't have a good place to go to, the letters were vague on that, if he doesn't have a good job offer.  I'm very familiar with the [International Electrical Workers] program.  And what they do is they make you an apprentice and then other people hire you.  And if they don't hire you, you don't have a job.  And you may be the best electrician in the world, but if nobody wants to hire you, you don't have a job.  It's not employment by IEW.  What we're concerned about is if you get out there again and you're unsuccessful in a job, same thing might happen.  That's why we suggest even a vocation in – they have forklift operators.  They have janitorial.  Many, many things.  And you've been here 20 years and you don't have those things.  The Panel feels that parole plans need to be firmed up.

---

[1]  It is unclear whether this sentence was 15 years to life or simply life with the possibility of parole.  Respondents cite a decision from the San Bernardino Superior Court denying habeas relief which states that petitioner was sentenced to an indeterminate life sentence, with the possibility of parole.  However, an October 1980 "Cumulative Case Summary" prepared by prison officials indicates a sentence of "15-Life."  Similarly, a psychological evaluation prepared for a parole hearing conducted in 2003 indicates that petitioner was ". . . serving the 22nd year of a 15 years-to-life sentence with the possibility of parole."  The same evaluation, along with a September 1989 form entitled "Recalculation of [Maximum Eligible Parole Date] for 15-Life and 25-Life Prisoners," indicate that, with various credits for good behavior and time already served, petitioner first became eligible for parole in 1988.

[2]  Respondents characterize the September 2004 hearing as petitioner's "third subsequent" hearing, or fourth total hearing as of 2004.

Petitioner filed a petition for a writ of habeas corpus in the San Bernardino County Superior Court challenging the September 2004 denial of parole. As to that petition, the state court identified six claims:

> 1. [Petitioner's] contract with the State of California has been violated . . . [¶] [because petitioner] entered into a plea bargain agreement for a sentence of fifteen (15) years to life but instead received a sentence of twenty-five (25) years to life, or, life without the possibility of parole;
> 2. [Petitioner] has served past the maximum possible base term of twenty-one years as set forth in the "matrix" of base terms for second degree murder; . . . [¶] [because] the Board of Prison Terms failed to conduct an Extended Term Hearing with[in] 120 days of Petitioner's reception it must be concluded that the murder he committed was not "particularly" egregious and so he should be release after twenty-one (21) years;
> 3. [Petitioner] has been "defrauded" by the State of California since he has not been released after twenty-one (21) years; . . . [¶] [petitioner] has received no benefit from his sentence so his plea bargain agreement has been violated;
> 4. [Petitioner] is suffering "cruel and unusual" punishment by having to serve more than twenty-one years . . . in prison, since his sentence is disproportionate to the offense. . . .;
> 5. [Petitioner's] rights to due process and equal protection under the law are being violated; and
> 6. [Petitioner's] right to liberty requires his release; . . . [¶] [petitioner] contends that he has been denied parole numerous times because of the nature of his offense, which is unreasonable since the nature of his offense will not change. . . .

As to these claims, the state court held:

> . . . There is no merit to Petitioner's first contention. [¶] On August 22, 1980, Petitioner pled guilty to second degree murder. In exchange for such a plea, four other felony charges were dismissed. Pursuant to the law in effect at that time, his sentence to state prison was not fifteen (15) years to life, it was "indeterminate" which means until he is found suitable for parole.
> . . . There is no merit to Petitioner's second contention. A person sentenced to life in prison has no right to release at any specified date, <u>or ever</u> during their lifetime. (emphasis in original). That is what a "life sentence" means. Persons who kill other persons for a handful of change cannot reasonably expect that they will be returned to society whenever they think it is proper. [¶] The "matrix" Petitioner refers to does not guarantee parole on a certain date; it only directs a time for parole consideration.
> . . . Petitioner has not been defrauded by the State of California or anyone else.

>  . . . A life sentence for a second degree murder is not "cruel and unusual punishment."
>  . . . Petitioner's "due process" and "equal protection" rights have not been violated.
>  . . . Petitioner has no "right" to release. He has a "right" to be considered for release, that's all. [¶] Despite Petitioner's frustration with the decision to deny him parole he has not shown that the Parole Board arbitrarily denied him such parole.
>  The petition is without merit and is denied.

Subsequent habeas petitions challenging the denial of parole in 2004 were denied by the California Court of Appeal and California Supreme Court without comment or citation. Respondents concede that petitioner's claims are exhausted.

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

4

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001). Thus, under § 2254(d), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 127 S.Ct. 649, 653-54 (2006). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. Jan. 17, 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, ___ F.3d ___ (9th Cir. Sept. 15, 2008) (citing Wright v. Van Patten, 128 S.Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 127 S.Ct at 654 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 127 S.Ct. at 653.

///

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See id.; see also Wiggins v. Smith, 123 S.Ct. 252 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). An "unreasonable application of" controlling law cannot necessarily be

found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 123 S.Ct. at 1175. This is because ". . . the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III. DISCUSSION

Petitioner contends that the Board's decision to deny parole in September 2004 was not supported by "some evidence" of unsuitability and, therefore, was arbitrary in violation of due process. He also contends that, by remaining in prison beyond the minimum term of his sentence, he is not receiving the benefit of his plea bargain. Finally, petitioner contends that his continued incarceration constitutes cruel and unusual punishment because more than 21 years in prison is a punishment which is disproportionate to a conviction for second degree murder.[3]

---

[3] Petitioner also asserts claims, as outlined in the state court's order, relating to setting of a specific release date. Specifically, petitioner contends that various rights have been violated because he was not released after serving 21 years in prison. These contentions are without merit. First, as respondents note, he first knew about these claims 21 years after he was

### A.   **Denial of Parole**

#### 1.   Applicable Law

In Sass v. Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), the Ninth Circuit held that California's parole statute does, in fact, create a federally cognizable liberty interest. See id. at 1127-28. On the merits, the court also rejected the argument that the "some evidence" standard does not apply in the parole context. See id. at 1128-29. Under Superintendent v. Hill, 472 U.S. 445, 455 (1985), due process requires that a prison disciplinary hearing decision be based on "some evidence" in the record as a whole which supports the decision. This standard, which the court has also applied in the parole context, is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. Additionally, this standard requires that the evidence underlying the Board's decision must have some indicia of reliability. See Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003).

In Sass, the Ninth Circuit also addressed the argument that the requirement of "some evidence" in the parole context has not been clearly established by the Supreme Court. The Ninth Circuit held:

> Hill's some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." (citation omitted). Hill held that although this standard might be insufficient in other circumstances, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." (citation omitted). To hold that less than the some evidence standard is required would violate clearly established federal law because it would mean that a state could interfere with a liberty interest – that in parole – without support or in an otherwise arbitrary manner. We

---

incarcerated in 1980. Thus, the one-year statute of limitations to seek habeas relief started to run in 2001 and expired in 2002. The record reflects that he did not first seek habeas relief in the state courts until August 2005. Therefore, claims relating to alleged violations resulting from his continued incarceration beyond 21 years are time barred. Second, these claims presume that California law requires that a release date be set after a prisoner serves a specific period of time in state prison. Petitioner is incorrect. For prisoners serving life sentences, a release date is set only after it is determined that the prison is suitable for release. Therefore, in petitioner's case, his claims regarding release after 21 years, even if not time barred, would not have any merit unless he had been found suitable for parole, which he was not.

        therefore reject the state's contention that the some evidence standard is not clearly established in the parole context.

Sass, 461 F.3d at 1129.

Because Sass and Biggs are binding precedent, this court must also concluded the "some evidence" standard is clearly established law for purposes of habeas corpus relief under AEDPA.[4] Therefore, this court will apply the "some evidence" standard on the merits. See id.; see also Irons v. Carey, 505 F.3946, 851 (9th Cir. 2007).

        In assessing whether the "some evidence" standard has been met, the analysis is framed by the state's statutes and regulations governing parole suitability. See Biggs, 334 F.3d at 915. Thus, this court looks to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole and then reviews the record to determine whether there is "some evidence" supporting the decision to deny parole. Under California Penal Code § 3041(b) and California Code of Regulations, Title 15, § 2402(a), once the inmate has served the minimum term required, a release date shall be set unless release currently poses an unreasonable risk of danger to society.[5] It follows from this that, even though there may be some evidence that a

---

[4] The court is aware of the Ninth Circuit's holding in Hayward v. Marshall, where the court applied the "some evidence" standard as clearly established law and concluded that habeas relief was granted because the continued reliance on immutable factors violated due process. See 512 F.3d 536. However, that case is not binding precedent pending issuance of the mandate. See Hayward, 527 F.3d 797 ("The three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit"). Among the issues being considered on rehearing is whether there is any clearly established law in the parole context. If the Ninth Circuit ultimately concludes that there is no clearly established law, habeas relief would be unavailable. See Moses v. Payne, ___ F.3d ___ (9th Cir. Sept. 15, 2008) (citing Wright v. Van Patten, 128 S.Ct. 743, 746 (2008)).

[5] The regulations set forth various circumstances which tend to show suitability and others which tend to show unsuitability. See Cal. Code Regs., tit 15 § 2402(c)-(d). Under § 2402(c), circumstances tending to show unsuitability include: (1) the facts of the commitment offense, where the offense was committed in an especially heinous, atrocious, or cruel manner; (2) the prisoner's previous record of violence; (3) a history of unstable relationships with others; (4) commission of sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the offense; and (6) serious misconduct while in prison. Circumstances tending to show suitability include: (1) lack of a juvenile record; (2) reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) lack of significant history of violent crimes;

particular unsuitability factor exists, this does not necessarily mean that there is some evidence of a current unreasonable risk of danger to the community if the inmate is released.[6]

In addition to concluding that due process requires "some evidence" in the parole context based on Hill, the Ninth Circuit has addressed whether the continued reliance on immutable factors satisfies this standard and whether continued reliance solely on such factors ignores the goal of rehabilitation and violates due process. In Biggs, where the petitioner was challenging the first denial of parole based solely on the facts of the commitment offense, the Ninth Circuit concluded that the denial was based on some evidence – the facts of the commitment offense – even though other findings made by the Board in Biggs' case lacked evidentiary support. In dicta, however, the court acknowledged that, sometime in the future, the continued reliance on immutable factors could violate due process. See Biggs, 334 F.3d at 917. From this, it is clear that the Board may rely solely on immutable factors for the first denial of parole given the minimal passage of time between the commitment offense and parole decision.

As to subsequent denials of parole and the continued reliance on immutable factors, the Ninth Circuit has not drawn any bright line. In Sass, where the petitioner was challenging the third denial of parole, the Ninth Circuit affirmed the denial of the habeas petition. See Sass, 461 F.3d at 1129. The court did not conclude that reliance on immutable factors (the facts of the commitment offense and the petitioner's prior criminal history) – even for a third time – violated due process. See id. The court held:

> In making a judgment call based on evidence of pre-conviction recidivism and the nature of the conviction offense, the Board cannot be categorized as acting arbitrarily. Here, the Board based its finding that

---

(5) realistic plans for release; and (6) participation in institutional activities indicating an enhanced ability to function within the law upon release. See Cal. Code Regs., tit. 15 § 2402(d).

[6]   The California Supreme Court has held that, under the regulations, the denial of parole may be predicated on the commitment offense only where the Board can point to factors beyond the minimum elements of the crime that demonstrate that, at the time of the suitability hearing, the inmate will present an unreasonable risk of danger to society if released. See In re Dannenberg, 34 Cal.4th 1061, 1071 (2005).

> Sass was unsuitable for parole on the gravity of his convicted offenses in combination with his prior offenses. These elements amount to some evidence. . . . Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.

Id.

In <u>Irons v. Carey</u>, 505 F.3d 846 (9th Cir. 2007), <u>rehearing en banc denied</u>, 505 F.3d 951 (9th Cir. 2007), the Ninth Circuit reversed the district court's grant of a habeas petition challenging the eighth denial of parole, concluding that the facts of the petitioner's commitment offense alone constituted some evidence of unsuitability under California law. The court in <u>Irons</u> noted that none of the Ninth Circuit's cases regarding reliance solely on immutable factors to deny parole involved inmates who had served the minimum terms of their sentences. Specifically, the court observed:

> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in <u>Biggs</u>, <u>Sass</u>, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. <u>Biggs</u>, 334 F.3d at 912; <u>Sass</u>, 461 F.3d at 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

Id. at 853-54.

As to the continued reliance solely on immutable factors, the court noted in dicta:

> Furthermore, we note that in <u>Sass</u> and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant

California statutes.

Id. at 854.

From Biggs, Sass, and Irons the court can conclude that, where the challenged parole denial occurs before the petitioner has served the minimum term of his sentence, the continued reliance solely on immutable factors to deny parole for up to eight times does not violate due process.  It may be that, so long as the inmate has not served his minimum sentence, the Board may deny parole any number of times based solely on immutable factors.[7]  Where the inmate has served the minimum term, the following rules apply:  (1) California law creates a liberty interest in parole for prisoners who have served the minimum sentence, see Sass, 461 F.3d at 1127-28; Irons, 505 F.3d at 853-54; (2) the Board's decision to deny parole must be supported by "some evidence" that the prisoner's release would have posed an unreasonable risk of danger to the community at the time, see Sass, 461 F.3d at 1128-29; and (3) the evidence relied upon by the Board must have some indicia of reliability, see Biggs, 334 F.3d at 915.  In some cases where the minimum term has been served, the continued reliance on immutable factors to deny parole may violate due process.  See id. at 917; see also Irons, 505 F.3d at 854.

      2.      Analysis

Initially, the court observes that this case does not present the situation of reliance solely on immutable factors.  The record reflects that the Board considered, among other things, petitioner's failure to upgrade vocationally and lack of adequate parole plans.  Therefore, there could have been no due process violation resulting from the continued reliance solely on factors which cannot change.[8]  The question in this case is whether the Board's September 2004 decision is based on "some evidence" bearing indicia of reliability that petitioner's release at that time

---

[7] Such a reading of the cases would be consistent with California law, which does not require that a parole release date even be considered until the inmate has served the minimum term of his sentence.  See Cal. Penal Code § 3041(b) and Cal. Code of Regs., Title 15, § 2402(a).

[8] It is thus unnecessary to determine whether petitioner had served any minimum sentence.

would have posed an unreasonable risk of danger to the community.

The court finds that the evidence relied upon to deny parole in 2004 – failure to upgrade vocationally and inadequate parole plans – bears indicia of reliability. Specifically, the record reflects that petitioner never obtained any vocational certificate during his time in prison through 2004 and that he did not have firm employment prospects upon release. The court also finds that both of these factors constitute "some evidence" that petitioner's release in 2004 would have posed an unreasonable risk of danger to the community. As the Board noted, without suitable vocational training and employment prospects – which was petitioner's situation at the time he committed the commitment offense – it is reasonable to conclude that petitioner would have returned to a life of crime. Put simply, as of 2004 petitioner had not demonstrated that he was rehabilitated to the point where his release would have posed only reasonable risks to public safety.[9]

On the record before the court, it cannot be said that the state court's denial of petitioner's claim challenging the denial of parole was either contrary to or an unreasonable application of any clearly established law.[10]

**B.    Violation of Plea Agreement**

Petitioner contends that he has not received the benefit of his plea bargain. Specifically, he states that he is being incarcerated beyond the 15 years he bargained for in agreeing to a sentence of 15 years to life. Assuming that the claim is timely and cognizable, it lacks merit because petitioner received all benefits of the plea bargain. In exchange for his guilty plea to second degree murder, four other felony charges were dismissed. Further, a sentence of

---

[9] This, of course, is not to say that petitioner has not completed his rehabilitation since then. The court cannot express any opinion on that issue as the record in this case does not extend beyond the Board's September 2004 denial of parole.

[10] This conclusion would be the same regardless of how the en banc Ninth Circuit eventually decides Hayward. If the three-judge panel opinion is affirmed, the "some evidence" standard applies and has been met in this case. If the en banc court concludes there is no clearly established law, habeas relief would be unavailable. Either way, this claim would be denied.

15 years to life does not necessarily mean that petitioner is entitled to be released after serving the minimum 15 years.  Rather, it means that he is entitled to a parole suitability hearing, which occurred in this case.  The sentence he bargained for – 15 years to life[11] – contemplates that petitioner could remain in prison for the rest of his life upon continued denials of parole.  Petitioner has not presented any evidence that he is not being regularly considered for release on parole.  Therefore, the state court's denial of this claim was neither contrary to nor an unreasonable application of any clearly established law.

### C.     Cruel and Unusual Punishment

Petitioner contends that his incarceration for a term longer than 21 years is unconstitutionally cruel and unusual punishment because such punishment is disproportionate to the crime of second degree murder.  In Lockyer v. Andrade, the Supreme Court concluded that habeas relief was not available on a claim that two consecutive sentences of 25 years to life in prison constituted cruel and unusual punishment because there is no clearly established Supreme Court precedent.  See 538 U.S. 63, 72.  The Court stated:

> Our cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality. . . .  [¶] Thus . . . the only relevant clearly established law amenable to the "contrary to" or "unreasonably application of" framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the "exceedingly rare" and "extreme" case.
>
> Id. at 72-73.

Thus, unless the case presents the "exceedingly rare" or "extreme" situation, application of the gross disproportionality principle is unclear and, for this reason, habeas relief is not available.  Cf Gonzalez v. Duncan, __ F.3d __ (9th Cir. Dec. 30, 2008) (applying the gross disproportionality principle to term of years sentence to grant habeas relief only because the case presented the "exceedingly rare" and "extreme" situation).

---

[11]     Assuming that is, in fact, the sentence he received.

Petitioner's case does not present the exceedingly rare or extreme situation such that the gross disproportionality principle could be clearly applied. The court finds that a life sentence is appropriate given petitioner's crime. Specifically, the record reveals that petitioner broke into the victim's house and beat her to death before stealing her money. The victim was found nude and spread eagle on her bed and had suffered numerous blows to the head. Moreover, petitioner had a history of burglary, theft, and assault offenses. Because the gross disproportionality principle cannot be clearly applied to the facts of petitioner's case, there is no clearly established law and habeas relief is unavailable.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 20 days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 27, 2009

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE